## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SOOKBOX LLC, ) | Case No. |
| ) | |
| Plaintiff, ) | **JURY TRIAL DEMANDED** |
| ) | |
| v. ) | |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., ) | |
| SAMSUNG ELECTRONICS AMERICA, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Sookbox LLC ("Sookbox" or "Plaintiff"), for its Complaint against Defendants, Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung" or "Defendants"), for patent infringement, alleges as follows:

### THE PARTIES

1.      Sookbox is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 101 East Park Boulevard, Suite 600, Plano, Texas 75074.

2.      Defendant SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-Ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do, 443-742, Republic of Korea. Samsung is a leading manufacturer and seller of smartphones, tablets, and smart home products (including smart televisions) in the world and in the United States.  On information and belief, SEC does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of

infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

3.      Defendant SEA is a corporation organized under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA has corporate offices in the Eastern District of Texas at 1303 East Lookout Drive, Richardson, Texas 75082 and 2800 Technology Drive, Suite 200, Plano, Texas 75074. SEA has publicly indicated that in early 2019, it would be centralizing multiple offices in a new location in the Eastern District of Texas at the Legacy Central office campus, located at 6225 Declaration Drive, Plano, Texas 75023. SEA may be served with process in Texas through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has specific and personal jurisdiction over each of the Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, each Defendant has sufficient minimum contacts with the forum because each Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, each Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because each Defendant is subject to personal jurisdiction in this Judicial District, has committed acts of patent infringement in this Judicial District, and is either a foreign company or has a regular and established place of business in this Judicial District.  Venue is proper in this Judicial District as to SEC, specifically, pursuant to 28 U.S.C. § 1391 because, among other things, SEC is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).  Each Defendant, through its own acts and/or through the acts of each other Defendant, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with this Judicial District such that this venue is a fair and reasonable one.  Further, on information and belief, the Defendants have admitted or not contested proper venue in this Judicial District in other patent infringement actions.

## **PATENTS-IN-SUIT**

7.      On November 22, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,503,486 (the "'486 Patent") entitled "Configuring, Networking, and Controlling a Plurality of Unique Network-Capable Devices." A true and correct copy of the '486 Patent is attached hereto as Exhibit A.

8.      On November 28, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,831,561 (the "'561 Patent") entitled "System, Apparatus, and Method for Controlling Internet Devices via a Mobile Device Session." A true and correct copy of the '561 Patent is attached hereto as Exhibit B.

9.      Sookbox is the sole and exclusive owner of all right, title, and interest in the '486 Patent and '561 Patent (collectively, the "Patents-in-Suit"), and holds the exclusive right to take

all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Sookbox also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

10.    Sookbox has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

11.    The Patents-in-Suit generally relate to managing and distributing the separation of media content within a network system.  For example, the Patents-in-Suit teach a home-networking system ("HNS") which enhances a home entertainment user experience, and facilitates managing and distributing the separation of media content and associated controls within a network system.

12.    The technology described in the Patents-in-Suit was developed by David Sukoff, Cyrus Vafadari, Mathew Peterson, and Adam Mustafa.  David Sukoff is the founder of Sookbox, a formerly Cambridge-based consumer electronics startup, where he and a team of MIT engineers have developed a paradigm-shifting media server, later called the "Stream Runner."  This product, unveiled at CES 2013, is the predecessor to many streaming and smart home devices on the market today.  Sookbox's products were widely publicized and garnered significant attention from the industry.[1]

---

[1]

https://www.youtube.com/watch?v=X6audE4ymWg;
https://web.archive.org/web/20130218212859/https://www.prweb.com/releases/2013/1/prweb103
01159.html

13.    The inventors met with Mr. Hyuk-Jeen Suh, then the Head of Samsung Ventures East Coast, at CES in 2013, among other Samsung employees, as shown by recorded CES badge scans:

|  | Tim | Thompson | Samsung |
|---|---|---|---|
| 323440 | Susan | Choi | Samsung Electronics America, Inc. |
| 349847 | Paul | Kim | Samsung Electronics America, Inc. |
| 349956 | Donato | Mitrani | Samsung Electronics America, Inc. |
| 325353 | Nastasha | Tan | Samsung Electronics America, Inc. |
| 270978 | ZhengYi | Wang | Samsung Electronics China R&D Center |
| 400458 | Kyle | Rhodes | Samsung Telecommunications America |
| 110345 | Hyuk-Jeen | Suh | Samsung Ventures |
|  | Nishant | Sharma | Samsung |

***Excerpt From CES Attendee Badge Scan Log***

14.    Following the meeting at CES, in early 2013, Mr. Suh invited Mr. Sukoff to present in Samsung's Boston Office and told Mr. Sukoff that he would send the presentation to the Samsung business unit in Korea. These discussions, and Sookbox's presentations, concerned the technology of the Patents-in-Suit. At the Boston presentation, Mr. Sukoff specifically informed Samsung representatives of the pending patent applications from which the Patents-in-Suit issued or claim priority, and that those patents covered their products:



## Sookbox
### - Product / Services

Through 3 distinct yet intertwined products, the Sookbox framework transforms the way devices communicate and operate.

1. <u>Sookbox Server</u> - Sookbox hosts media, and serves it upon command

2. <u>Sookbox Software</u> - The application platform is software that allows the control of content, enabling a user to send commands via a smart device and have content sent to its appropriate destination.

3. <u>Stream Runner</u> <sup>TM</sup> - This is an IP enabled computing device that serves a content stream to an output, within or outside the home.

*Excerpt from slides shared with Mr. Suh*

15.    In late 2013, Samsung expressed interest in acquiring Sookbox and hiring its employees. At CES in January 2014, the Sookbox inventors again met with Samsung representatives and engineers including Mr. Richard Chun (then the Senior Manager of Technology Partnerships and now Director of the same), Mr. Jonathan Tepper (then the Vice President and General Counsel, Samsung NEXT), and Mr. Burke Davis (then the Sr. Analyst at Samsung NEXT) to discuss Samsung's prospective acquisition and to again discuss Sookbox's technology.  During this meeting, the Sookbox inventors provided a comprehensive demonstration of their Stream Runner product and reminded Samsung of their pending patent applications.

## Intellectual Property

| TITLE | CORE NOVELITES |
|---|---|
| Method and System for Providing Digital Content | - Digital content streaming sessions to controls<br>  • Numerous, multi-directional feedback<br>- Session state feedback to controls agnostically<br>- Zone manager (outputs are uniquely and independently identifiable) |
| Method and System for Managing Separation of Digital Content and Control by host Non-Discriminatively | Host-to-control (non-discriminative)<br>- Utilization of socket (I/O)<br>  • Client-to-server (request)<br>  • Server-to-client (response)<br>  • Server (broadcast)<br>  • Hybrid (request, response, update) (zone-switching)<br>- Separation of content and controls ("Chrome")<br>- Utilization of device native controls (iOS)<br>  • Keyboard, Mouse-pad ("gestures " - pointer, pinch-to-zoom , finger scroll)<br>- Browser App. (method)<br>- Video / Audio App. (method) |
| Method and System for Managing Separation of Digital Content and Control by Host Discriminatively | Host-to-control (discriminative)<br>- Utilization of socket (I/O) & device native controls (iOS)<br>  • Hybrid (request, response, update) (session locking, parental controls, guest access, zone locking)<br>- Gaming App. (Texas Hold'em) (method)<br>- Entertainment App. (Karaoke, YouTube, DJ) (method) |
| Digital Content Streaming Device, Apparatus, System, Method for Connectivity and Control Independent from Proximity | - IP addressable device as a wireless HDMI extender to host in network system<br>- IP addressable  device as own host with access to NAS |
| System and Method for Optimized Content and User Profile Aggregation Into a User Interface | - Digital content aggregation to find content based on the user profile (attributes):<br>  • interests, behavior, access, community |
| A System and Method for Optimizing, Dividing, Distributing, and Synchronizing Digital Content and Controls | - Open development platform for easy apps integration<br>- Streaming content sessions are process centric and not longer depend on host, control, and/or output location<br>- Streaming content sessions optimized by user profile and proximity to host, control, output device peripherals |

*Excerpt from January 2014 slides*

16.     Following the January 2014 meeting and demo, Samsung again expressed interest in acquiring Sookbox and hiring its employees.  Samsung scheduled a follow-up meeting in New York in May 2014. The Samsung personnel attending that meeting were former employees of Boxee, another startup and competitor of Sookbox which Samsung acquired in July 2013. Sookbox once again comprehensively demonstrated its ground-breaking technology and notified the Samsung personnel in attendance of its pending patent applications.



*Excerpt from January 2014 slides shared with Samsung Prior to New York Meeting*

17.    Samsung stopped communicating with Sookbox following the meeting in May 2014.  In August 2014, Samsung purchased SmartThings Inc, another Sookbox competitor.  On information and belief, Samsung was aware that the Smart Home devices which it acquired and/or planned to develop from SmartThings Inc. would practice the technology disclosed in the then-pending Sookbox patent application and its child applications, at least based on the extensive communications with the Sookbox inventors.

18.    On information and belief, Samsung is a sophisticated entity which has an IP management database and employees whose primary role is to evaluate and/or monitor patents of possible acquisition targets and other patents which are brought to Samsung's attention and may

impact Samsung's business.  On information and belief, Samsung has been aware of the Patents-in-Suit, and its infringement thereof, since the time of their issuance at least on that basis.

19.    Alternatively, to the extent that Samsung has avoided actual knowledge of the Patents-in-Suit, Samsung has been willfully blind to its infringement of the Patents-in-Suit.  On information and belief, to the extent it lacked actual knowledge of infringement, Samsung deliberately avoided learning of infringement despite subjectively believing that there was a high probability that it infringed Sookbox's patents, and specifically the Patents-in-Suit.    On information and belief, Samsung has adopted a policy or practice of not reviewing the patents of others, including those related to Samsung's specific industries and of Sookbox in particular, thereby remaining willfully blind to the Patents-in-Suit.  On information and belief, Samsung lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by Samsung and lacks mechanisms for employees to report patents which they believe Samsung may infringe.

20.    Samsung has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import, products including, but not limited to, all Samsung smart televisions, smart device management applications such as Samsung's Connect Home and SmartThings, and other infringing technology.

## COUNT I
### (Infringement of the '486 Patent)

21.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

22.    Plaintiff has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '486 Patent.

23.    Samsung has and continues to directly infringe the '486 Patent, either literally or

under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '486 Patent.  Such infringing products include smart device management applications.  On information and belief, infringing products include at least Samsung's Connect Home and SmartThings Platform and related products and services ("Samsung Applications").

24.     For example, Defendants have and continue to directly infringe at least claim 9 of the '486 Patent by making, using, offering to sell, selling, and/or importing into the United States the Samsung Applications.

25.     The Accused Products comprise an input/output processing system.  For example, the SmartThings Platform allows a mobile device to act as a content control application, enabling users to configure and manage various smart home devices through a native user interface.  The platform receives and processes user actions, such as tapping a button (i.e., inputs) to turn on smart devices (e.g., a television, smart lights, etc.) or setting automation rules to establish a content control session (i.e., outputs).



# SmartThings

**Visit the app store for more information**

Google Play Store ↗  Apple App Store ↗  Microsoft Windows Store ↗  Galaxy Store ↗

## About SmartThings

With SmartThings, you can connect and control multiple devices quicker and easier. No matter where you are, you can monitor and control smart devices, home appliances, TVs, and speakers registered on the server.[2]

---

[2] https://www.samsung.com/us/support/owners/app/smartthings



26.     The Accused Products comprise a content control application executing on a mobile control device (e.g., a Samsung smartphone) for configuring a content control session (e.g., setting up a routine) based on interpretation of user actions recorded by a user interface that is native to the mobile control device, wherein the content control session is configured with a content input/output application selected through the user interface, wherein the content input/output application is associated with a peripheral.  For example, when the SmartThings Platform on a mobile device is configured to control multiple smart devices, such as televisions and lights, it downloads and displays individual input/output applications (i.e., control modules) for each

---

[3] https://developer.smartthings.com/docs/getting-started/architecture-of-smartthings

available processing node (i.e., smart device) with the associated peripheral (i.e., the communication interface). A user creates a routine that includes a plurality of processing nodes (e.g., smart devices including sensors, smartphones, televisions, and lights) as both input devices (i.e., devices that trigger a routine) and output devices (i.e., devices that execute actions upon a trigger condition). Once the routine is configured, a content control session is established with the content input/output applications on the corresponding processing nodes (i.e., smart devices).



---

[4] https://partners.smartthings.com/partners/smartthings



5

The SmartThings platform encompasses all of the components required to execute the functions and capabilities of the SmartThings ecosystem. This includes executing a user's request, enabling device and cloud-to-cloud communication, running Automations, monitoring events in a user's home and in the SmartThings Cloud, and more.

**The SmartThings Cloud**

The SmartThings Cloud is the part of the platform responsible for ensuring complex automations are executed, for maintaining device health, for onboarding devices, and for allowing users to remotely access their Devices and Automations through SmartThings Clients, such as through the SmartThings app.

The SmartThings Cloud is built using standard data entities and subscriptions for the home, car, and life. Devices and Connected Services use these data entities to display data, track events, trigger automations, and more.

6

---

[5] https://developer.smartthings.com/docs/getting-started/architecture-of-smartthings
[6] https://developer.smartthings.com/docs/getting-started/architecture-of-smartthings

**Automations**

Automations are used to automate Devices and Connected Services that are on the SmartThings platform. Examples include turning a light off when a user's Location changes, or sending a notification when a motion sensor is triggered.

There are two types of Automations on the SmartThings platform:

- **Rules** enable you to automate the Devices and services that connect to the SmartThings platform.
- **Scenes** enable you to simultaneously set a group of devices to a particular state.

Automations appear in the *Automations* section of the SmartThings app. They are associated with a Location and not an individual user account; all users with access to the Location will therefore have access to all Automations created for the Location.

**Connected Services**

The second method to control and automate your devices is by building a Connected Service. With a Connected Service, you can subscribe to events, run the automation logic on your server, and send events back to the device you want to automate.

While Automations and Connected Services share some similarities, Connected Services are typically used to build connections outside the SmartThings platform. Connected Services can connect a user's smart home to the broader world through third-party apps, services, and integrations.[7]

# SmartThings API (1.0-PREVIEW)

## Overview

This is the reference documentation for the SmartThings API.

The SmartThings API, a RESTful API, provides a method for your integration to communicate with the SmartThings Platform. The API is the core of the platform. It is used to control devices, create Automations, manage Locations, retrieve user and device information; if you want to communicate with the SmartThings platform, you'll be using the SmartThings API. All responses are sent as **JSON**.

The SmartThings API consists of several endpoints, including Rules, Locations, Devices, and more. Even though each of these endpoints are not standalone APIs, you may hear them referred to as such. For example, the Rules API is used to build Automations.[8]

---

[7] https://developer.smartthings.com/docs/getting-started/architecture-of-smartthings
[8] https://developer.smartthings.com/docs/api/public





27.    The Accused Products comprise a host content control application (e.g., the control application component/class in the SmartThings Cloud, the SmartThings Hub, or a combination of both) that is adapted to aggregate a plurality of real-world input/output processing nodes (e.g., smart devices) into a set of processing nodes (e.g., a group of smart devices selected within the routine/scene) for collectively executing the content input/output application (e.g., the routine/scene).  For example, a user sets up an automated or manually triggered routine in the SmartThings Platform to control multiple smart devices simultaneously using if-then conditions. The trigger defined in the "if" condition initiates the automation, while the "then" condition executes specific commands on each configured smart device.  When the "if" condition is met, the

---

[10] https://www.youtube.com/shorts/4VHpGoP-oVE?feature=share

host content control application receives a signal and sends a set of individual commands to the group of smart devices via the SmartThings Cloud or Hub, ensuring coordinated execution of the automation.





28. The Accused Products comprise a plurality of functions that collectively determine the operation of the input/output application. For example, in the Samsung Applications, these functions are executed through the Routines/Scenes features, which define how smart devices interact based on user-defined conditions and triggers. Within the SmartThings Platform, a user configures a routine where multiple smart devices operate together in response to a trigger. Functions such as turning off lights, televisions, and air conditioners work collectively to execute the input/output application (e.g., routine). When a trigger condition is met (e.g., when all registered user devices leave the house), the Samsung Applications process the automation logic and execute the required functions on the designated smart devices.

---

[11] https://www.youtube.com/shorts/4VHpGoP-oVE?feature=share

29.     The Accused Products comprise a plurality of different types of input/output devices connected individually to distinct processing nodes (e.g., smart devices) in the set of processing nodes.  For example, the Samsung SmartThings Platform comprises a plurality of different types of input/output devices (e.g., displays, lights, sensors, and the like) connected individually to distinct processing nodes in the set of processing nodes (e.g., processors of corresponding smart devices).



---

[12] https://support.smartthings.com/hc/en-us/articles/360052390111-Devices-in-SmartThings





14



15

30.     The Accused Products comprise an application instantiation facility for identifying

the set of processing nodes and for instantiating each function of the plurality of functions on

---

[14] https://developer.smartthings.com/docs/api/public
[15] https://developer.smartthings.com/docs/certification/overview

distinct processing nodes in the set of processing nodes, wherein input/output requirements of each function of the plurality of functions is used to determine into which processing node the function is instantiated based on a class parameter of the distinct processing nodes. For example, in the SmartThings Platform, when a user configures a routine, such as "when all registered users leave home, turn off the lights and TV," the SmartThings Cloud or Hub evaluates the set of available processing nodes (e.g., processors of smart bulbs, smart televisions, thermostats) and determines where each function should be executed. The application instantiation facility assigns the location detection function to the registered smartphones with location enabled, the light-off function to the smart light processing node, and the television turn off function to the smart television. For example, on information and belief, each processing node is selected and assigned tasks based on class parameter, including at least device type, supported functions, and input/output capabilities.



---

[16] https://partners.smartthings.com/partners/smartthings

# Linked Services in the SmartThings App

When adding cloud-based devices to SmartThings you will have to connect the manufacturer's Service to the SmartThings app.

You can view all of the third-party services you have connected to SmartThings by selecting **Menu** (☰), tapping the **Gear (⚙)**, and choosing **Linked Services**.

[17]

---

The SmartThings platform encompasses all of the components required to execute the functions and capabilities of the SmartThings ecosystem. This includes executing a user's request, enabling device and cloud-to-cloud communication, running Automations, monitoring events in a user's home and in the SmartThings Cloud, and more.

**The SmartThings Cloud**

The SmartThings Cloud is the part of the platform responsible for ensuring complex automations are executed, for maintaining device health, for onboarding devices, and for allowing users to remotely access their Devices and Automations through SmartThings Clients, such as through the SmartThings app.

The SmartThings Cloud is built using standard data entities and subscriptions for the home, car, and life. Devices and Connected Services use these data entities to display data, track events, trigger automations, and more.

[18]

---

**Automations**

Automations are used to automate Devices and Connected Services that are on the SmartThings platform. Examples include turning a light off when a user's Location changes, or sending a notification when a motion sensor is triggered.

There are two types of Automations on the SmartThings platform:

- **Rules** enable you to automate the Devices and services that connect to the SmartThings platform.
- **Scenes** enable you to simultaneously set a group of devices to a particular state.

Automations appear in the *Automations* section of the SmartThings app. They are associated with a Location and not an individual user account; all users with access to the Location will therefore have access to all Automations created for the Location.

**Connected Services**

The second method to control and automate your devices is by building a Connected Service. With a Connected Service, you can subscribe to events, run the automation logic on your server, and send events back to the device you want to automate.

While Automations and Connected Services share some similarities, Connected Services are typically used to build connections outside the SmartThings platform. Connected Services can connect a user's smart home to the broader world through third-party apps, services, and integrations.

[19]

---

[17] https://support.smartthings.com/hc/en-us/articles/360051930512-Using-the-SmartThings-App
[18] https://developer.smartthings.com/docs/getting-started/architecture-of-smartthings
[19] https://developer.smartthings.com/docs/getting-started/architecture-of-smartthings

## SmartThings API (1.0-PREVIEW)

### Overview

This is the reference documentation for the SmartThings API.

The SmartThings API, a RESTful API, provides a method for your integration to communicate with the SmartThings Platform. The API is the core of the platform. It is used to control devices, create Automations, manage Locations, retrieve user and device information; if you want to communicate with the SmartThings platform, you'll be using the SmartThings API. All responses are sent as **JSON**.

The SmartThings API consists of several endpoints, including Rules, Locations, Devices, and more. Even though each of these endpoints are not standalone APIs, you may hear them referred to as such. For example, the Rules API is used to build Automations. [20]

31.   Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '486 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Samsung's customers and end-users, in this District and elsewhere in the United States. For example, Samsung's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '486 Patent. Samsung induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, SDKs, marketing, product manuals, advertisements, and online documentation. Because of Samsung's inducement, Samsung's customers and end-users use the Accused Products in a way Samsung intends and directly infringe the '486 Patent. Samsung performs these affirmative acts with knowledge of the

---

[20] https://developer.smartthings.com/docs/api/public

'486 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '486 Patent.

32.     Samsung has indirectly infringed and continues to indirectly infringe one or more claims of the '486 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Samsung's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '486 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '486 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Samsung to be especially made or adapted for use in the infringement of the '486 Patent.  Samsung performs these affirmative acts with knowledge of the '486 Patent and with intent, or willful blindness, that they cause the direct infringement of the '486 Patent.

33.     Samsung's infringement of the '486 Patent is willful, at least because it has and continues to knowingly and deliberately infringe the '486 Patent.  Samsung was contacted by the inventors of the '486 Patent at least as early as 2013 and was aware of the patented technology since at least that time.  Samsung was aware that the patented technology was included in a pending patent application and knew of, or was willfully blind to, the issuance of the Patents-in-Suit.

34.     Plaintiff has suffered damages as a result of Defendants' direct and indirect infringement of the '486 Patent in an amount to be proven at trial.

35.     Plaintiff has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '486 Patent, for which there is no adequate remedy at law, unless

Defendants' infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '561 Patent)**

36.     Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

37.     Plaintiff has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '561 Patent.

38.     Samsung has and continues to directly infringe the '561 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '561 Patent.  Such infringing products include smart display devices.  On information and belief, infringing products include at least Samsung's smart televisions, the Samsung Galaxy S24, and related products and services ("Samsung Display Devices").

39.     For example, Defendants have and continue to directly infringe at least claim 7 of the '561 Patent by making, using, offering to sell, selling, and/or importing into the United States the Samsung Display Devices.

40.     The Accused Products comprise a display device comprising one or more processing devices capable of processing streaming video data and control signal data.  For example, the Samsung Neo QLED 8K Smart TV (i.e., display device) is powered by the advanced Neural Quantum Processor 8K (i.e., processing unit).  This processing unit is designed to handle and stream high-quality video content over a Wi-Fi network. One of the pre-installed apps available is Samsung TV Plus, which provides access to a wide variety of channels, movies, and shows (i.e., video data source).  These streaming services are delivered to the television through an internet connection (via Wi-Fi), allowing users to enjoy a diverse range of content.



41.    The Accused Products comprise a network interface configured to receive streaming video data from a content server and control signal data from a mobile device sent over a wireless connection.  For example, the Samsung Neo QLED 8K Smart TV (i.e., display device) is equipped with a network interface (e.g., Wi-Fi interface) that allows it to receive video data (e.g., streaming video) from a content server (e.g., a media server or cloud server, video streaming app) using pre-installed apps like Samsung TV Plus.  It also receives control signals (e.g., inputs or commands) from mobile devices (e.g., smartphones) via a wireless connection (e.g., Wi-Fi or Bluetooth).

---

[21] https://www.samsung.com/us/televisions-home-theater/tvs/samsung-neo-qled-8k/65-class-qn900c-samsung-neo-qled-8k-smart-tv-2023-qn65qn900cfxza/



42.    The Accused Products comprise display devices (e.g., the Samsung Neo QLED 8K Smart TV) that are configured to receive streaming video data via the network interface over a network (e.g., Wi-Fi) from the content server (e.g., Samsung TV Plus), wherein the content server is connected to the network via the network interface.

---

[22] https://www.youtube.com/watch?v=sjvwOCM6_VY, Timestamp: 1:02



43.     The Accused Products comprise display devices (e.g., the Samsung Neo QLED 8K Smart TV) that are configured to receive control signals from one or more mobile devices (e.g., the Samsung Galaxy S24) controlling a display of the video data via manipulation of one or more content items (e.g., buttons and sliders) displayed on any combination of at least one mobile device and the display device.

---

23 https://www.youtube.com/watch?v=sjvwOCM6_VY, Timestamp: 1:35



44.    The Accused Products comprise display devices wherein the video data from the content server and feedback for control signals sent from the one or more mobile devices is displayed on the display device.  For example, using the Samsung SmartThings Platform on a Samsung Galaxy S24 mobile device, control signals such as channel changes and volume adjustments are sent wirelessly via Wi-Fi to the Samsung Neo QLED 8K Smart TV, signaling it to respond to the control signals.

45.    The Accused Products comprise display devices wherein the one or more content items (e.g., buttons and sliders) displayed on a mobile device (e.g., Samsung Galaxy S24) include a connection (e.g., pairing of devices over Wi-Fi and Bluetooth) of the mobile device to the display device (the Samsung Neo QLED 8K Smart TV), and to content on the content server (e.g., Samsung TV Plus) associated with the video data.  For example, the Samsung Neo QLED 8K Smart TV and Samsung Galaxy S24 are paired within the Samsung SmartThings Platform.  Once

---

[24] https://www.youtube.com/watch?v=sjvwOCM6_VY, Timestamp: 2:05

the devices are paired, the mobile device is used as a wireless remote control in order to search on the content server and send the control signals, such as channel changes and volume adjustments, wirelessly to the Samsung Neo QLED 8K Smart TV.



46.     The Accused Products comprise display devices wherein the one or more content items (e.g., buttons and sliders) displayed on a mobile device (e.g., Samsung Galaxy S24) include one or more controls that invoke display of the content on the content server (e.g., Samsung TV Plus) on the display device (the Samsung Neo QLED 8K Smart TV).  For example, remote control buttons on a Samsung Galaxy S24 will control the display of content from Samsung TV Plus on a paired Samsung Neo QLED 8K Smart TV.

47.     Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '561 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Samsung's customers and end-users, in this District and elsewhere in the United States. For example, Samsung's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '561 Patent.  Samsung induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions,

---

[25] https://www.samsung.com/us/smartthings/, Page 2

documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, SDKs, marketing, product manuals, advertisements, and online documentation.  Because of Samsung's inducement, Samsung's customers and end-users use Accused Products in a way Samsung intends and directly infringe the '561 Patent.  Samsung performs these affirmative acts with knowledge of the '561 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '561 Patent.

48.     Samsung has indirectly infringed and continues to indirectly infringe one or more claims of the '561 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Samsung's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '561 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '561 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Samsung to be especially made or adapted for use in the infringement of the '561 Patent.  Samsung performs these affirmative acts with knowledge of the '561 Patent and with intent, or willful blindness, that they cause the direct infringement of the '561 Patent.

49.     Samsung's infringement of the '561 Patent is willful, at least because it has and continues to knowingly and deliberately infringe the '561 Patent. Samsung was contacted by the inventors of the '561 Patent at least as early as 2013 and was aware of the patented technology since at least that time. Samsung was aware that the patented technology was included in a pending

patent application and knew of, or was willfully blind to, the issuance of the Patents-in-Suit.

50.    Plaintiff has suffered damages as a result of Defendants' direct and indirect infringement of the '561 Patent in an amount to be proven at trial.

51.    Plaintiff has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '561 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

a.    Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the Patents-in-Suit;

c.    An order awarding damages sufficient to compensate Plaintiff for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.    Entry of judgment declaring that this case is exceptional and awarding Sookbox its costs and reasonable attorney fees under 35 U.S.C. § 285; and

f.     Such other and further relief as the Court deems just and proper.

Dated:  May 21, 2025                         Respectfully submitted,

                                             */s/ Peter Lambrianakos*
                                             Peter Lambrianakos
                                             NY Bar No. 2894392
                                             Email: plambrianakos@fabricantllp.com
                                             Vincent J. Rubino, III
                                             NY Bar No. 4557435
                                             Email: vrubino@fabricantllp.com
                                             **FABRICANT LLP**
                                             411 Theodore Fremd Avenue
                                             Suite 206 South
                                             Rye, New York 10580
                                             Telephone: (212) 257-5797
                                             Facsimile: (212) 257-5796

                                             ***ATTORNEYS FOR PLAINTIFF
                                             SOOKBOX LLC***